**Edith W. DOREY, Plaintiff-Appellee,**

v.

**Francis DOREY, etc.,
Defendant-Appellant,**

**Leo E. Costello, Movant-Appellant.**

No. 77–2879.

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1980.

Rehearing and Rehearing En Banc
Denied Feb. 14, 1980.

---

See also, D.C., 77 F.R.D. 721.

Fred Blanton, Jr., Birmingham, Ala., for Costello.

Leo E. Costello, Birmingham, Ala., for Francis Dorey.

John D. Prince, Jr., Birmingham, Ala., for plaintiff-appellee.

Before SIMPSON, CHARLES CLARK and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Francis and Edith Dorey [1] were married in Massachusetts in 1938. Over a period of more than twenty-five years their marital relationship deteriorated to the extent that in 1965 Mrs. Dorey filed suit in California for separate maintenance.[2] In August, 1966, the California court entered an interlocutory judgment of divorce between the parties which, among other things, ordered Francis Dorey to make certain support payments to Edith Dorey. The California court entered a final judgment of divorce in 1967, and later that year Edith Dorey successfully got the amount of the alimony payments increased.

Francis Dorey left California sometime in 1968 and, as frequently occurs, he fell behind in payments to his ex-wife. Francis Dorey's whereabouts and employment changed a number of times after 1968, but in 1975 Mrs. Dorey located him in Alabama. In order to obtain money Mr. Dorey owed her, Edith Dorey filed an action for arrearages in the California courts. Francis Dorey received substituted service in Alabama and hired an attorney in California to represent him. The California lawyer appeared in the case and vigorously argued Mr. Dorey's position. The representation, however, was to no avail. On October 15, 1975, the California judge ordered Francis Dorey to pay Edith Dorey arrearages totalling over $25,000 with interest from the date of judgment. Additionally, the court continued Francis Dorey's support obligation at $225 per month "until [Mrs. Dorey] dies, remarries, or until further order of the Court."

Shortly after obtaining the California judgment, Edith Dorey invoked the juris-

---

1. Mr. Dorey is referred to in the pleadings and during the trial in the district court as Frank Dorey, Francis Dorey, Francis W. Dorey and Francis Williard Dorey. We will, to be consistent, refer to him as Francis Dorey.

2. At the time both Francis and Edith Dorey resided in California.

diction of the federal courts under 28 U.S.C. § 1332 and filed suit against Francis Dorey in the United States District Court in Birmingham, Alabama. In late 1976 and early 1977 the parties engaged, although not without difficulty, in a sort of discovery[3] and the case was tried and submitted in late January, 1977. Later that year the district court entered judgment in the matter and ordered defendant Francis Dorey to pay Mrs. Dorey over $34,000 in back support and interest and future alimony payments of $225 per month. The court's order also required Mr. Dorey to keep the court apprised of his address and employment and restrained and enjoined defendant and his lawyer, among others, from disposing of any assets beyond those required to pay "reasonable living expenses" until satisfaction of the judgment.[4] Finally, the court ordered defendant and his lawyer, Leo Costello, to pay Mrs. Dorey $2,000 attorney's fees and nearly $600 in costs for failure to make discovery. Francis Dorey and Leo Costello appeal. We affirm in part and reverse in part.

## I. THE EFFECT TO BE GIVEN THE CALIFORNIA JUDGMENT

In the present diversity action, the district court properly recognized its constitu-

tional and statutory mandate to accord the California judgment full faith and credit. U.S.Const. art. IV, § 1; 28 U.S.C. § 1738. However, since we believe the court granted the California judgment greater force and effect than the Alabama courts would have, we reverse in part.

### A. Jurisdiction

■ Defendant asserts that the California judgment Mrs. Dorey obtained was not entitled to full faith and credit because the California court lacked personal jurisdiction over him. The position is patently meritless. The California courts, in each of the orders concerning the support duties of Francis Dorey, retained continuing jurisdiction over the matter. See Cal.Civ.Code § 4801; R. Leflar, American Conflicts Law § 28 at 51 & nn. 4–5 (2d ed. 1968); G. Stumberg, Principles of Conflict of Laws 81 & n. 61 (3rd ed. 1963). Indeed, the judgment sued upon in the United States District Court in Alabama establishes support at $225 per month "until further order of the [California] Court." Francis Dorey received notice of the California proceeding and appeared in the action.[5] Clearly, the California court appropriately exercised its jurisdiction.

---

**3.** See part II, infra.

**4.** Francis Dorey and his attorney argue that the district court judgment, read literally, prohibits "defendant Francis Dorey and his agents, servants, employees, attorneys, and those persons in active concert or participation with them" from disposing of personal assets. The contention lacks merit. It is manifest that the district court intended to preclude Francis Dorey and those with whom he is associated only from disposing of Francis Dorey's assets. Accordingly, we read the district court judgment as applicable only to the assets of defendant.

**5.** Mr. Dorey's appearance through counsel in the California litigation would be sufficient of itself to confer jurisdiction on the California courts. See Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 153 (5th Cir. 1974); Maner v. Maner (Maner II), 412 F.2d 449, 451–52 (5th Cir. 1969); R. Leflar, supra, § 20 at 36, § 27 at 49; G. Stumberg, supra, at 80; Restatement (Second) of Conflict of Laws § 33 (1971); Restatement of Judgments § 19 (1942). Defendant argues that the California

attorney exceeded his authority in making a general appearance in the proceeding because the lawyer was employed solely for the purpose of contesting jurisdiction. Since we hold that the California courts clearly retained personal jurisdiction over Francis Dorey, we are not constrained to meet the issue. Nevertheless, we note that there is support for the view that a party is not bound by the appearance of an unauthorized attorney. R. Leflar, supra, § 27 at 50 & n. 5; Restatement (Second) of Conflict of Laws § 33, Comment h; Restatement of Judgments § 12, Comments b, c (1942). A presumption of authority of the attorney, however, arises from the mere fact of the appearance. R. Leflar, supra, § 27 at 50 & n. 6. Nothing in the present case indicates that the presumption is overborne. To the contrary, the record clearly establishes that the lawyer acted under general authority to prosecute the litigation and that, although he did not ultimately prevail, he attempted a general representation of his client's cause.

### B. *Future Alimony Installments*

■ Because the California courts properly exercised jurisdiction over Francis Dorey, there is no question that the California money judgment required enforcement by the federal district court. The California judgment for a sum certain, from which defendant failed to appeal, was unquestionably final and therefore entitled to full faith and credit.[6] *See Hazen Research, supra*, 497 F.2d at 153; *Maner II, supra*, 412 F.2d at 450–51; *Maner v. Maner (Maner I)*, 401 F.2d 616, 618 (5th Cir. 1968); *Green v. Green*, 239 Ala. 407, 408–09, 195 So. 549, 550 (1940); *Smith v. Smith*, 361 So.2d 369, 371 (Ala.Civ.App.1978); *Fowler v. Fowler*, 45 Ala.App. 354, 356, 230 So.2d 744, 746 (1970); Restatement (Second) of Conflict of Laws §§ 107, 108 (1971). However, in providing for *in futuro* alimony, the district court exceeded the requirements of full faith and credit and its authority as a diversity court constrained by Alabama law.

In *Maner I, supra*, this Court spoke to the precise question confronted here.

> In regard to the enforcement of the [foreign state court] alimony decree as to future installments, the full faith and credit clause does not require Alabama courts to enforce that decree since it is not final and may be modified as circumstances require. . . . However, as a matter of comity, Alabama courts may

enforce a foreign alimony decree requiring future payments, but in this respect the Federal District Court sitting in effect as an Alabama court in a diversity case is bound by Alabama Law. 401 F.2d at 618 (citations omitted).

The *Maner I* court concluded that Alabama courts would not enforce an award for future alimony. *Id.* Although that conclusion is somewhat less certain now than it was in 1968, we hold that *Maner I* still accurately reflects Alabama law.[7] Accordingly, we reverse that portion of the district court's judgment enforcing the California award of future alimony.

### C. *Equitable Aspects of the Judgment*

Mr. Dorey contends that the federal district court erred in ordering him to keep the court apprised of his address and employment and in enjoining him and others who represent him from disposing of assets "beyond reasonable living expenses" until satisfaction of the judgment. The assertion misses the mark.

■ The law of the jurisdiction granting a foreign judgment full faith and credit determines the methods by which the judgment may be enforced. *Lynde v. Lynde*, 181 U.S. 183, 187, 21 S.Ct. 555, 45 L.Ed. 810 (1901); Restatement (Second) of Conflict of Laws § 99 (1971); R. Leflar, *supra*, § 76 at

6. This judgment, when rendered in October, 1975, was for the sum of $25,587.67 plus interest from October 15, 1975. At the time the United States District Court rendered its judgment in August, 1977, the judgment, including accrued interest, was $34,123.85.

7. In *Green v. Green, supra*, the Alabama Supreme Court adopted the position that an award of future alimony is not sufficiently final to require its enforcement under full faith and credit. 239 Ala. at 409, 195 So. at 550. Similarly, in *Ives v. Ives*, 247 Ala. 689, 690, 26 So.2d 92, 93 (1946), the court found accrued alimony installments subject to retroactive modification in the granting state not final and therefore not subject to enforcement under full faith and credit.

Since the *Maner I* decision, the authority of *Ives* has been questioned but *Green* retains its vitality. In *Smith v. Smith, supra*, the Alabama Court of Civil Appeals held that although past-due alimony installments were retroactively

modifiable in the granting state and therefore not final for full faith and credit purposes, enforcement of the past due support obligations is permissible as a matter of comity. 361 So.2d at 371–72. Nevertheless, the *Smith* court expressly acknowledged that the case was one of first impression in Alabama, *id.* at 371, and the *Smith* analysis has not been extended to circumstances involving awards for future alimony. (In *Fowler v. Fowler, supra*, a case arising before *Smith*, the court affirmed a judgment that, among other things, enforced a foreign decree for future alimony. 45 Ala.App. at 355–56, 230 So.2d at 745–46. In *Fowler*, however, the future alimony provision was not appealed and, further, the court relied heavily on *Green* in deciding the litigated issue. *Id.* at 356, 230 So.2d at 746.) We believe that *Green* remains valid and that Alabama courts, applying *Green*, would not enforce a foreign award for future alimony.

176–77. Indeed, the state enforcing a foreign judgment may use equitable means normally available to it in enforcing judgments even if those means are not available in the forum that rendered the judgment. *See Glanton v. Renner*, 285 Ky. 808, 149 S.W.2d 748, 751 (1941). Further, a federal court sitting in diversity follows the practice of the state in which it sits with regard to equitable enforcement of judgments. *See Stephenson v. Duriron Co.*, 292 F.Supp. 66, 80 (S.D.Ohio 1968), *aff'd* 428 F.2d 387, 392 (6th Cir.), *cert. denied*, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 247 (1970). Federal courts enforcing foreign alimony awards follow the general rule. *See Howard v. Jennings*, 146 F.2d 332, 334–35 (8th Cir. 1945).

■■■ Alabama courts employ their equitable powers to enforce alimony judgments. *See McGugin v. McGugin*, 357 So.2d 347, 351 (Ala.Civ.App.1978); *Moore v. Moore*, 57 Ala.App. 735, 331 So.2d 742, 744 (Ala.Civ. App.1976); *Stone v. State*, 42 Ala.App. 485, 485–86, 168 So.2d 266, 266–67 (1964). Further, equitable powers will be used in enforcing a foreign support judgment. *See Fowler v. Fowler, supra*, 45 Ala.App. at 356, 230 So.2d at 746. Even contempt of court that may result in imprisonment is available, *see Stone v. State, supra*, 42 Ala.App. at 485–86, 168 So.2d at 266–67, and Alabama courts exercise equitable powers to eliminate the interest of one party in a home formerly jointly owned. *See McGugin v. McGugin, supra*, 357 So.2d at 351; *Moore v. Moore, supra*, 331 So.2d at 744. Directly relevant to the present situation, one party in domestic litigation has been restrained from disposing of assets until satisfaction of an alimony judgment. *Awad v. Awad*, 54 Ala.App. 154, 156, 306 So.2d 21, 23 (1975). There can be little question of the district court's authority to equitably enforce its judgment, and the district court committed no error in doing so.[8]

■■ Francis Dorey argues that the district court erred in its award of interest. He apparently complains of interest accumulating on interest. The award of interest on interest is proper in those situations in which a judgment grants interest on an amount resulting from an unsatisfied judgment on which interest has accrued. *Hellenic Lines, Ltd. v. Gulf Oil Corp.*, 359 F.2d 403, 404 (2d Cir. 1966). Mr. Dorey also contends that the California judgment did not specify the rate of interest applicable. We need do no more than note that the judgment set interest at the rate "allowed by law."

## II. PENALTIES FOR FAILURE TO MAKE DISCOVERY

Francis Dorey and his attorney, Leo Costello, challenge the authority of the district court to impose upon them sanctions of $599.06, as reasonable expenses incurred by plaintiff Edith W. Dorey in proving the facts recited in the pleadings and opinion herein and in establishing the genuineness of the documents admitted into evidence . . . and the additional sum of $2,000.00 as a reasonable attorney fee to [the] attorney for the . . . plaintiff for services rendered on account of failure of . . . Francis Dorey, as advised by Leo E. Costello, to make discovery . . . .

Under the Federal Rules of Civil Procedure, the district court possessed the authority to assess the penalty and did not err in exercising that authority.

Neither party in the present litigation performed admirably with regard to discovery. Edith Dorey filed suit in October, 1975. Nevertheless, despite notice of the determination of the court that compliance with discovery rules would be more vigorously enforced,[9] the parties failed to engage

---

**8.** We note that, since we reverse that portion of the district court judgment enforcing the California future alimony award, Mr. Dorey's responsibilities to report on his address and employment and to refrain from alienating his assets (*see* note 4, *supra*) are not unduly burdensome. Those obligations will terminate upon satisfaction of the money judgment. *See Awad v. Awad, supra*, 54 Ala.App. at 156, 306 So.2d at 23.

**9.** A "Statement on Discovery Motions" was attached to a mid-November motion docket

in any form of discovery whatsoever until after the pretrial conference in December, 1976.[10]

Mrs. Dorey complied with the pretrial order and had requests for admissions personally served on Francis Dorey's lawyer on December 13, 1976. In response to the requests for admissions, Mr. Dorey timely filed a Rule 26(c) motion for a protective order which was granted in part and denied "in all other respects" in an order of the United States Magistrate dated December 29, 1976. The magistrate granted Francis Dorey until January 5 to answer the requests and, on that date, he filed an answer. Edith Dorey deemed the answer inadequate, however, and on January 25, 1977, filed a motion to determine the sufficiency of the response as to twenty-eight specific matters.[11] The district court in effect consolidated the motion with others concerning the adequacy of discovery to be considered following trial.

As the events described above unfolded, the parties also tussled on another discovery front. Mrs. Dorey's attorney served by hand one set of interrogatories on Francis Dorey's lawyer on December 13, and another set on December 22. The trial date of January 25 approached, however, and Francis Dorey did not answer the interrogatories. On January 21, thirty-five days after service of the first set of interrogatories and thirty days after service of the second set, Mrs. Dorey's attorney hand served on Attorney Costello a motion for default judgment for failure to answer interrogatories.[12] Francis Dorey's answers to both sets of interrogatories were mailed on January 21.[13]

We believe that the district court was fully justified under the circumstances in imposing the relatively light sanctions involved here. Francis Dorey and Attorney Costello contend that the penalties come under the rubric of Rule 37(b) and therefore cannot stand because there was no violation of a court order compelling discovery. The argument, however, fails to recognize that the sanctions imposed were clearly under the authority of Rule 37(c) ("Expenses on failure to admit")[14] and Rule 37(d) ("Failure of party to . . . serve

sent to counsel for both parties. The statement indicated that "[t]he courts will not be as reluctant as in the past to assess expenses and impose other sanctions" for noncompliance with the federal rules governing discovery. Further, the statement, in discussing the discretionary award of expenses under Rule 37, specifically noted that a "variety of more serious sanctions is authorized where a party . . . makes no response whatever to interrogatories . . . within the time allowed, generally 30 days."
See F.R.Civ.P. 33(a).

10. In its pretrial order of December 3, 1976, the district court granted plaintiff Edith Dorey ten days to serve on Francis Dorey a request for admissions under Rule 36. The court also ordered Francis Dorey to respond to the request within fifteen days of service "under the penalties prescribed" by the rules of civil procedure.

11. The motion also requested costs and attorney's fees.

12. See note 9, supra. The motion also requested costs and attorney's fees.

13. Although not necessary for decision of the case, it is interesting to note that the answers were mailed from Birmingham, Alabama, to the

court in Birmingham, and to Edith Dorey's lawyer, also in Birmingham. Nevertheless, although the certificate of service indicated mailing on January 21, the envelopes containing the answers were postmarked January 24 (P.M.). Neither the court nor Mrs. Dorey's attorney received the answers until the date of the trial, January 25, 1977, thirty-four days after service of the *second* set of interrogatories.

14. (c) *Expenses on failure to admit.* If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.
Fed.R.Civ.P. 37(c).

answers to interrogatories . . .").[15] Ordinarily Rule 37 sanctions are imposed following violation of a court order. 8 Wright & Miller, Federal Practice & Procedure: Civil § 2282 at 757 (1970). The only exceptions to the general rule are those situations involving Rules 37(c) and 37(d). *Id.; see Fox v. Studebaker-Worthington, Inc.,* 516 F.2d 989, 993 (8th Cir. 1975) [F.R. Civ.P. 37(d)]; *Robison v. Transamerica Ins. Co.,* 368 F.2d 37, 39 (10th Cir. 1966) [F.R. Civ.P. 37(d)].[16] Both rules state that if certain requirements are not met the court *shall* impose sanctions upon application or motion.

The requirements necessary to justify Rule 37(c) sanctions were clearly met in the present case. Costs and fees imposed by the court could have covered in part expenses incurred in proving facts that should have been admitted.[17] Indeed, in its Memorandum Decision accompanying judgment in the litigation, the district court expressly noted that the "clear and uncontroverted proof made in open Court justifies a larger sum . . . ." Nevertheless, the court was unwilling to require payment of all expenses resulting from "procurement of evidence to substantiate the facts on which refused admissions were later proven."

Similarly, the court could have appropriately assessed costs and attorney's fees against Francis Dorey and his attorney for failure to answer interrogatories. As noted above, even if the answers to interrogatories are determined to have been made on January 21, the requirement of Rule 33(a) that interrogatories be answered within thirty days of service certainly was not met. Further, Edith Dorey's motion for default judgment satisfies the motion requirement of Rule 37(d).[18] With reference to the Rule 37(d) motion, the district court again noted that the evidence justified a much greater award of fees and expenses than that granted.

■ The district court has broad, although not unbridled, discretion in imposing sanctions, including default judgment and dismissal, under Rule 37. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). Especially is this true in the imposition of the monetary penalties involved here. *See Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 503 (4th Cir. 1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). Nothing in the record suggests that the court abused its discretion in any way in requiring Francis Dorey and his attorney to pay to Edith Dorey nearly $2,600 in costs and attorney's fees. We are not left with a

---

15. (d) *Failure of party to . . . serve answers to interrogatories . . . .* If a party . . . fails . . . (2) to serve answers . . . to interrogatories submitted under Rule 33, after proper service of the interrogatories . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just . . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
  The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c). Fed.R.Civ.P. 37(d).
  Although defendant Francis Dorey filed a Rule 26(c) motion for protective order, the motion and order addressed themselves only to plaintiff's request for admissions and not to either of plaintiff's sets of interrogatories.

16. Edith Dorey's motion for default judgment was denominated as a Rule 37(b)(2)(C) motion. The motion, however, is clearly based upon the failure of Francis Dorey to answer the first set of interrogatories and as such is more properly viewed as a Rule 37(d) motion. Rule 37(d) explicitly incorporates the sanctions enumerated in Rule 37(b)(2), including the ultimate penalty—default judgment. As noted above, however, under Rule 37(d) violation of a court order is not a necessary predicate to the imposition of sanctions.

17. Edith Dorey's January 25 motion to determine the adequacy of the response to requests for admissions satisfies the application requirement of Rule 37(c). *See* note 11, *supra.*

18. *See* note 12, *supra.*

" 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors.' " *Wilson v. Volkswagen of America, Inc., supra,* 561 F.2d at 506 [quoting *Finley v. Parvin/Dohrmann Co.,* 520 F.2d 386, 390 (2d Cir. 1975)].

AFFIRMED IN PART, REVERSED IN PART.